IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| **CAMILLE Y. FORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | )   Civil Action No. 1:08-0241 |
| | ) |
| **UNITED STATES OF AMERICA**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

On April 7, 2008, Plaintiff, acting *pro se* and incarcerated at FPC Alderson, located in Alderson, West Virginia, filed her Application to Proceed *in Forma Pauperis* and Complaint claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971). (Document Nos. 1 and 2.) Plaintiff names the following as Defendants: (1) The United States of America; (2) Deborah Hickey, Warden; (3) Allen Blankenship, Health Administrator; and (4) Dr. Neal Rehberg, Clinical Director. (Document No. 1, p. 4.) Plaintiff alleges that the Defendants acted with negligence and deliberate indifference concerning her medical condition, which resulted in "hearing loss in [her] right ear." (Id.) Specifically, Plaintiff states as follows:

> Federal Prison Camp Clinical Director has shown deliberate indifference to my serious medical needs concerning my hearing loss in my right ear. This is considered cruel and unusual punishment towards my condition. Upon my arrival to Alderson, I was essentially a healthy woman. In the year of 1997, I started experiencing difficulty with dizziness (vertigo), vomiting, and severe ringing in my right ear which caused difficulty in my hearing. After several complaints to the health services department, I was sent to an ENT Specialist, Dr. Paul Strausbaugh, M.D., in 1998. At that time, Dr. Jorge Vasquez was the Clinical Director at the prison's health services. I was diagnosed by Dr. Strausbaugh with having Meniere's Syndrome. I was also given a hearing test and was prescribed two medications

> (nasonex and diazide) that alleviated certain symptoms for 2 years. However, the tinnitus of my right ear never went away.
>
> In May 2001, after numerous complaints concerning the same attacks, I was sent out and received a CT of the sinuses which indicated my having chronic sinusitis. Dr. Vasquez continued to treat me for Meniere's Syndrome and prescribed Antivert for the vertigo as the attacks came and went. Dr. Vasquez resigned from FPC Alderson and so did any treatment concerning my condition. I started noticing changes in my hearing in 2005. Such a change that I started inquiring about it at each chronic care appointment, as well as complying to procedure by going to sick call to complain about my hearing loss as well as my frequent dizziness.
>
> Dr. Neal Rehberg, D.O., is now clinical director at Alderson Federal Prison Camp. I have complained on every chronic care visit concerning my hearing loss as well as symptoms of vertigo. My concerns were, "why am I losing the hearing in my right ear" and "why do these symptoms of vertigo come and go at any given time." I was told that I am losing my hearing due to "old age" and that I am to continue doing whatever I have been doing for the vertigo. Finally after threats and verbal attacks by this doctor, I was sent to the outside hospital after being scheduled for a CT scan. On December 11, I was scheduled for my routine chronic care visit with Dr. Rehberg. During this visit, I was verbally abused and thrown out of his office with Teresa Mann standing guard. I was told that the CT scan came back with nothing being wrong with my inner ear, but a small Lacunar Infarct was found on the right parietal lobe. He ranted and raved about nothing being wrong with me because hundreds of people walk around with an infarct on their brain. As I inquired about the new findings as well as my hearing loss, and how did I get this Lacunar Infarct, Dr. Rehberg became irrate telling me that he was doing nothing else for me and that my case was now closed! I continued inquiring about my hearing loss and he replied by saying, "I will send you to get a hearing test, after that your case is closed!"
>
> I have complained to the Warden, as well as the Regional Directors through Administrative Remedies BP-9, BP-10, BP-11 complaints, which so far have all been denied. I was told by the Audiologist, Ms. Lashley Epling, that I will not receive my hearing back. She also informed me that she does not know if I will lose anymore of my hearing, but has referred me to an ENT Specialist. That referral was denied by Dr. Neal Rehberg. I was told by the Health Administrator, Mr. Allen Blankenship, on April 25, 2007, at 9:30 a.m. that my chronic care had been discontinued as of December 11, 2006. The same day that Dr. Rehberg and I had the altercation. I am now afraid to go to sick call concerning my problems with my ear. I feel as if I am walking into a trap even though Dr. Rehberg is no longer the person that I see if I decide to go to sick call. I now see a nurse practitioner concerning my problems, but she has to report to Dr. Rehberg concerning all that she does. Retaliation has come upon me concerning my ear because the Administrative Remedies that I have done.

(Id., pp. 4 - 6.) As relief, Plaintiff requests "treatment by an ENT Specialist" and "compensation in

the amount of 2 million dollars." (Id., p. 5.)

2

By Order entered on June 1, 2011, the undersigned determined that an updated Application to Proceed *in Forma Pauperis* was required based upon Plaintiff's release from custody.(Document No. 4.); See DeBlasio v. Gilmore, 315 F.3d 396 (4th Cir. 2003). The undersigned ordered that "Plaintiff shall either pay the $350 filing fee or file an updated Application to Proceed *in Forma Pauperis* by Friday, July 1, 2011." (Document No. 4.) The undersigned further notified Plaintiff as follows:

> Failure of the Plaintiff to either pay the filing fee or file an updated Application to Proceed *in Forma Pauperis* by July 1, 2011, will result in a recommendation of dismissal of this matter without prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia.

(Id.) Plaintiff has not responded to the Court's Order that was entered more than a month ago. Accordingly, the undersigned has determined that Plaintiff has failed to take any steps to prosecute this action, and therefore, Plaintiff's Complaint in this case should be dismissed.

## ANALYSIS

Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia, District Courts possess the inherent power to dismiss an action for a *pro se* Plaintiff's failure to prosecute *sua sponte*.[1] See Link v. Wabash Railroad Co., 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962).

Rule 41.1 of the Local Rules provides:

---

[1] Rule 41(b) of the Federal Rules of Civil Procedure provides:

**(b) Involuntary Dismissal: Effect**. If the plaintiff fails to prosecute or to comply with these rules or any order of court, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - - except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 - - operates as an adjudication on the merits.

> **Dismissal of Actions**. When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the action. The clerk shall transmit a copy of any order of dismissal to all counsel and unrepresented parties. This rule does not modify or affect provisions for dismissal of actions under FR Civ P 41 or any other authority.

Although the propriety of a dismissal "depends on the particular circumstances of the case," in determining whether to dismiss a case involuntarily for want of prosecution, the District Court should consider the following four factors:

(i) the degree of personal responsibility of the plaintiff;
(ii) the amount of prejudice caused the defendant,
(iii) the existence of a history of deliberately proceeding in a dilatory fashion, and
(iv) the existence of a sanction less drastic than dismissal.

Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989). In consideration of the first three factors, the Court finds that the delays in this case are attributable solely to the Plaintiff as the Defendants have not been required to make an appearance in this action.[2] Pursuant to 28 U.S.C. § 1915, federal courts may authorize the commencement of an inmate's civil action *in forma pauperis* upon the inmate's filing an Application to so proceed, together with an Affidavit stating the nature of the action and Plaintiff's belief that she is entitled to redress. 28 U.S.C. §§ 1915(a)(1) and (2)(2002). "Section 1915 is intended to allow qualified litigants to proceed without having to advance the fees and costs associated with litigation." DeBlasio v. Gilmore, 315 F.3d 396, 398 (4th Cir. 2003). Plaintiff has not responded to the Court's Order directing her either to pay the requisite $350.00 filing fee in full or

---

[2] The Bureau of Prisons' Inmate Locator indicates that Plaintiff was released from custody on April 2, 2010. It is Plaintiff's responsibility to provide the Court with a notice of change of address. *See* Rule 83.5 of the Local Rules of Civil Procedure("A *pro se* party must advise the clerk promptly of any changes in name, address, and telephone number.")

to file an updated Application to Proceed *in Forma Pauperis*. (Document No. 4.) Plaintiff, therefore, is the sole cause of the delays in this action. With respect to the second and third factors, although the record is void of further evidence indicating that Plaintiff has a history of "deliberately proceeding in a dilatory fashion," the Court does not find that the named Defendants will be prejudiced by dismissal of Plaintiff's Complaint.

In consideration of the fourth factor, the Court acknowledges that a dismissal under either Rule 41(b) or Local Rule 41.1 is a severe sanction against Plaintiff that should not be invoked lightly. The particular circumstances of this case, however, do not warrant a lesser sanction. An assessment of fines, costs, or damages against Plaintiff would be futile in view of Plaintiff's failure to pay the filing fee. Moreover, explicit warnings of dismissal would be ineffective in view of Plaintiff's failure to respond to the undersigned's Order entered more than a month ago advising Plaintiff that the undersigned would recommend dismissal if Plaintiff failed to complete and file the above forms (Document No. 4.). Accordingly, the undersigned has determined that this action should be dismissed without prejudice unless Plaintiff is able to show good cause for her failure to prosecute.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** this case without prejudice for failure to prosecute and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: July 11, 2011.

R. Clarke VanDervort
United States Magistrate Judge